Mr. Chief Judge, and may it please the Court, Mark Jones for Alan Johnson. In the trial below, the appellant received a trial that was marred in a number of errors, some going to basic trial procedures, some to basic trial administration, but there were many that were independently and cumulatively enough that I think we can say that he did not receive a fair trial in the Eastern District of North Carolina. In light of the government's 28J letter, I think the question now is whether, in addition to a remand for resentencing, there shall also be a vacator of the judgment or a remand for a new trial. I put forth a number of issues, and I think on that first point, it seems that the Court may not have any real reason to oppose a remand, but I'm not sure that the Court would have to go along with the Justice Department concession that that's the proper way to sentence. It seems to me that's still an issue for the Court to decide, but it may be just raising issues that we don't need to raise that involves five years among, how many years did he get? Fifty. To the extent that the 28J letter is, I guess, a motion to remand, we would join in that, obviously. I'd like to turn the Court's attention, I think what that does, though, if the Court intended to remand. It would be ethical to get it back, right? Yes, and what it would do, it would moot out our first issue, which was the Elaine issue. I'd like to start with argument number five, which is the errors under Rule 801 D1B. I don't think there is an argument that the government can make that explains why either Special Agent Eubanks was allowed to recite all these prior statements or why he was allowed and asked point blank, do you think his trial testimony was consistent with what he told you? That rule is clear that the only time you can use prior consistent statements is if you are rebutting a claim of recent fabrication or recent improper motive. And the government attempts to argue that there is an allegation that it was recently fabricated, but that recent fabrication or that motive had to predate the statements that were made. And in this case, Samuel Gaines and Eric Davis made a statement to law enforcement when they already had a motive to curry favor with law enforcement, Davis not to be charged with his ten and a quarter pounds of marijuana, Samuel Gaines to try to get his time cut in this case. I think that the Hedgepath case from this circuit is very clear that it says you simply cannot put in prior consistent statements to bolster. And the Supreme Court decision in Tome and this court's decision in Acker, citing Tome, make perfectly clear that you cannot put on additional evidence to bolster the credibility of your trial witnesses. I think that's what happened here and I think that there are grounds, given that this case had a lot to do with the credibility of the witnesses, to send it back just on that basis. I think perhaps the next part that sticks out to me are the comments made by the prosecutor during her closing arguments. You may not tell the jury that there is other evidence that you have and that you have heard and not show it to the jury and essentially say, trust us, it corroborates what we have. And this might have been hyperbole, but what she said was, we have 15 other victim witnesses and they had relevant evidence and we could have put them on the stand and they could have testified against them. And we had 20 law enforcement officers that could have come in here and testified against them as to what they did. That's 35 additional witnesses corroborating or with new information that the government said it had and it said we're choosing not to call them, we don't want to prolong this. That is the government putting its thumb on the scale. Was there an objection made to any of the officers? There was not, your honor. So that's under... Plain error review. Whether we choose to notice the error. That's correct, your honor. And I think given the egregious nature of those accusations, the court, just as to that issue, would be within its, it would be proper for the court to notice it and send it back for a new trial on that basis. The problem with a number of the issues here is that we either fall into harmless error or plain error and... There's a lot of difference. There are, there are a lot of issues here, but... But there's a lot of difference between plain error and harmless error. There is, although I do want to make a point as to argument 11, which is that whether it's an error but it's not a plain error or does it rise to the level of a substantial right being impacted. But my point is even if it rises to plain error, we would have to conclude it affected the substantial justice of the outcome of the case. And that's a pretty heavy burden. It is, your honor. Although argument 11, under the cumulative error doctrine, says that where we have multiple errors, whether harmless or that would have been errors but didn't count as plain errors, we can aggregate those. And if we aggregate those errors, which individually don't rise to plain error, demonstrate error or miscarriage of justice, then the court can remand on that basis also. There's a thread that goes through this case, which is, it started at the very beginning where the district court judge said, you're guilty, you're going to get 45 or 50 years, whether you plead or whether you go to trial. And you get the sense in reading this that the judge pushed this case through as quickly as he could. And every time there was an opportunity to speed it up or to shut down an objection, it happened. And so in looking at plain error or harmless error, we don't have a lot of good, competent other evidence to look at. There was plenty of evidence, but everything the government put in somehow has some little hitch to it, some mar to it. And so it's hard to say that looking at all of the evidence, he got a fair trial. We don't have a body of other evidence that wasn't marked by some error to look at. And so whether it's harmless error or a plain error standard, it's hard to look at the rest of the body of this trial and say that he got a fair trial. There just isn't good evidence that came in without some error. The 404B evidence, I think, is illustrative of that. The prosecutor said when he was arrested in August, I want them to know he had a gun when he was arrested in August. The prosecutor didn't say, I'm offering this for knowledge, or I'm offering this for intent, or here's how it's related to knowledge, or here's how it's offered for intent, or any other 404B purpose. She said propensity. He had it in August. He likely had it in July. And the government, in its reply, says, well, no limiting instruction was asked for. Well, when defense counsel objected to it, the judge told him to go sit down. He said, we're having too many of these sidebar discussions. So there was a hostility that the defense counsel at the trial level faced with everything. Turning back a little bit to the 801D1B issue, he was, defense counsel during Crawls, was trying to suss out the different contradictory and inconsistent statements that Davis had made. And he was trying to pin down, had he initially lied about the marijuana? When did he tell about the quarter pound of marijuana? When did he tell about the 10 pounds of marijuana? And he was delving into the character for truthfulness of that witness. And the judge said, that's not what it's about. And he shut him down. He said, he's a drug dealer. We know he's a drug dealer. That doesn't mean he can't get shots. Essentially, sit down. The district court involved itself in this proceeding from start to finish that indicated that it had an opinion as to what needed to happen here. I've argued in one section that the questions and the number of the questions that the judge asked were inappropriate. He asked questions that clearly indicate that he knows what the answer is going to be. He knows what the evidence is. He's directing the witness to indicate that he had been shot. He really does move Davis through a lot of his testimony. There was, the district court certainly has broad discretion to control how the evidence comes in. And it should clarify issues that are uncertain. And he does a good job of that in places where the witness can't be heard. He asks good clarifying questions. But other times, he takes these witnesses through the paces and gets in chunks of the evidence. I think the confrontation clause issue is one that's particularly important for the court to look at. They put the case agent on the stand and they say, did you get involved in this? And then they say, essentially, tell us about your investigation. And what he does is sort of walk through everything that he has received in his investigation. And particularly of importance are the accusations of the non-testifying co-defendant. And instead of saying, yes, I spoke with this individual. Were objections made to those? Yes, Your Honor. So there's the harmless area question. It is, Your Honor. And the government's response is, this is not offered for the truth of the matter asserted. It was offered to show why he was being investigated. And I understand that. And there are cases that say that's a valid basis. But there must be some balancing in this case. It cannot be that a case agent gets to talk about everything that he heard every witness say just to let the jury know why his investigation went where it did. There are certainly ways that he could have discussed what he did without divulging the contents of the highly prejudicial statements in this case. The same is true about the statements that other victims of the Able Auto robbery saw this green turquoise car. We had victims from Able Auto who testified. Neither of them saw a green car. And to link back to the vouching or the bolstering during the closing arguments, you have the agent saying we have these victims that told us X. And you have the prosecutor saying I had all these other victims that I could have called. The jury is going to link that up and think that there's other evidence that they've been told about by the case agent. And that's who the prosecutor is referencing. Let me ask you some questions. I'm scared you're going to run out of time before you get to these issues. Tell me, I could not figure out what went back to the jury. Did a CD of the entire interrogation go back to the jury? Here's what I believe went back to the jury, Your Honor. We first have Exhibit 51, which is the disk. And that is the disk of the actual video. And that was admitted for all purposes at Joint Conduct 268. Then we have the clips, the two little clips, which was Exhibit 58, admitted at 269, which were published but never actually admitted, and they were attempted to be played, but they were unintelligible. When those failed, the government had Binder, which was 52, which was the pages of the transcript. And then when they were discussing the evidence at page 294. I've read it. My question is, again, did the DVD of the full two-hour interrogation go back to the jury? I believe the disk of the full interrogation went back. Is the answer yes or no? I'll ask you again. Did the DVD of the full two-hour interrogation of Johnson go back to the jury? I believe that's what the record shows, and here's why, Your Honor. The discussion about substituting out part of it, substituting 59 or the segments, is about the Binder. They removed 52, which was the transcript, all of it, and put in the segments, which was essentially 52 amended. And I think 52 amended, along with the disk of the whole thing, 51, and 59, the transcript, on another disk. I think those three things went back to the jury. What did the judge hold? I thought there were some things that the judge said wouldn't go back. He was looking at 52, which was the Binder, and I do think that he recognized that there was a problem with all of it going back, having already admitted it against Mr. Johnson for all substantive purposes. I understand, but I'm trying to follow up on Judge Traxler's question. I believe... I thought he held back the transcript, and the disk was basically unintelligible. That's why they had the transcript. And I didn't think either of those... The disk may have gone back. It's unclear, but I thought the transcript was held up. And the question is, did the jury just have the transcript of the excerpts and the entire disk? But I... I believe the paper copies that it had were the excerpts, and that it also had two disks. One was a PDF of the transcript, and one was the disk of the full transcript. But even if the only thing that did go back was just the 16-page paper excerpts, even those were problematic. Because on the last page of those, and I think it's page 339 of the joint appendix, there's a discussion where Agent Eubanks is telling the interviewee, or it comes out, we have this other evidence against you. We have the photo lineup of Davis, where Davis said you were there, and we know that's not true. This is one of the ruses that Eubanks was trying to play on the interviewee to get him to confess. And Davis, in his testimony, said, I don't know that guy. Davis never identified him, but yet we have in this transcript other evidence where the special agent that's coming in for substantive purposes has said, yes, there's been an out-of-court identification of you as the defendant. One of the issues that I think bears noting is the part...  It was, Your Honor. All of the transcripts were objected to. Routinely objected to. Yes. And did the jury have the means of playing this DVD? The court assured that it did. Okay. Now, with regard to the jury charge, is my recollection correct that the judge said, I'm going to charge the request that you've given me, but didn't do it? That's correct, Your Honor. All right. Is there any evidence that that affected closing argument by the defense counsel or anything like that? You know, a lot of times defense counsel will say, I expect you'll hear the judge will charge you so-and-so and didn't rely on that. Is there anything like that? The prosecutor made arguments regarding what the instructions were, and I will say that I believe that her arguments as the instructions were equally invalid as the law. My question was, did it affect defense counsels? No, Your Honor. The charge was made... He said he was going to do it, but the charge was made after they had already argued. So I don't think they... I see. Okay, so they didn't know for sure. Is there any explanation for why the judge didn't do what he said he was going to do? Other than... Other than the charge? Other than my belief, Your Honor, that it was going to take too long and it was ready to get this case over with. All right. The definition of interstate commerce, what is the inadequacy specifically in the way he chose to phrase it? It is not that there is some connection with something that has moved between one state and another or a person or a place. Here we have a person who was robbed in a place, his house. The evidence was that the house was not used to sell drugs, but it's not that you... How can a place be involved in interstate commerce when it's a home? You have to connect, not just that it's a person or place that moved interstate commerce, but that it had effect on something that moved... But he said before that that it has to affect interstate commerce, and then he explained that it has to go between states. He says what it means to affect interstate commerce. Yeah, so he used the word affect interstate commerce, and then his explanation, which is I clearly agree with you, it's ambiguous, but I thought he was addressing what interstate commerce means. It means connected to things going back and forth. He really should probably say affecting commerce that was going back and forth instead of connected. But he did. I thought he did use the term earlier. It's not beautiful. And I don't know off the top of my head, Your Honor, whether or not he had said interstate commerce, and that was his definition or not, but when he went to define it, he used an artful and inaccurate... I was just thinking that it was ambiguous, and he may have simply been explaining that you have to have two states involved as opposed to the relationship to the commerce. He did use... I don't know what he's asking involved or connected to or something like that. It was a funny word. Yes, it was that a person or place that was robbed in some way has some connection to something moving between one state and another. Yeah. I would respectfully reserve that balance for my time. Yeah, you've got some time remaining. Let's hear from Ms. Fritz. May it please the court. My name is Christine Fritz, and I represent the United States in this matter. And as noted in our 28J letter, we're requesting that the 924C sentences be vacated and be remanded to the district court.  and all of the other charges be remanded to the district court. Let me ask you... It's laudable that the government takes that position, and it seems to me it's an act of fairness in your assessment of how this should be done. But was it error for the district court to do it the way it did it? The Department of Justice policy is yes, that it was error. Well, hold it. Policy doesn't make it error. The position. The position of the Department of Justice is that it was error because 924C... Okay, that's what I wanted to understand. Is there something in the guidelines that says what order you have to apply these enhancements? No, and that's the problem. Well, it's a problem, but the question is whether it's error. The way the Department reads 924C is that it doesn't specify the order. It doesn't tell you... You adopted a policy in the interest of fairness. Yes. My whole point is council do this sometime, want to remand a case because the government confesses error, and we never hear it. And here we're reversing a district court judge on that basis when there's no error, just simply because the government thinks it would be fairer to do it a different way. And I think that's a little dicey without determining whether it is legal error. The way that we read the statute is that it is ambiguous as to which 924C conviction is to go first. Ambiguous doesn't even address, is it? It's not addressed. Okay, so it's not ambiguous, it's just that it's not addressed. And that our position is that under the rule of lenity, the question should be resolved in the favor of the defendant so that the lesser... be placed first. And it's the rule of lenity that we believe that that is appropriate under. Well, I'm not criticizing the policy, please understand. It's a noble policy, but I just worry about us acceding to a stipulation without determining ourselves that it was error or not error. And obviously you have prosecutorial discretion, and I suppose maybe we yield to that in sending that back. Yes, we would rely on the rule of lenity. Of course, if the court disagrees, then finds that the ordering was not... You don't need to vote. Okay. Go ahead and address your point. I think the heart of the defendant's argument, it's fair to say, that it focuses on the closing arguments and on Eubank's testimony. The closing arguments, the claim of vouching or bolstering is reviewed for plain error. There was no objection to this. We submit that nothing about the government counsel's statement suggests that she had a personal belief or that she was giving personal assurances of the credibility of these witnesses. And I'd like to focus on the three different things about the closing argument that the defendant challenges. First, he challenges that a statement by the prosecutor that can reasonably be understood to be a reference to the trial exhibits in discussing the interstate nexus of the ABLE auto insurance. We had introduced basically transmittal reports for three different insurance companies that were out of state. And in closing arguments, although she does reference policies, I think in saying that she can't lay her hands on these right now, it is not a reference to something outside of the record. Now, the statement about not calling all of the victims of ABLE auto insurance robbery or the various officers involved in the investigation, I'd ask the court to consider that in context here. In the beginning of the closing arguments, the government counsel explained, this has been a long day, you've heard a lot of testimony. And I think that she was conveying to the jury that the government selected the most important witnesses to provide the most relevant information. What we had presented to the jury was sufficient to give a clear picture of what happened, and it was sufficient for the jury to render its verdict. I don't think that there's anything about that reference to suggest that what these other individuals would have said about their experience or what the officers would have said about their actions corroborated these other testimonies. Instead, it was just that we elected not to choose, we elected not to call every possible witness. I think it was to, in a way, having set up that this was a very long trial, you received a lot of testimony. Please keep in mind that the government, we acted selectively in presenting the testimony to you. We did not want to prolong this trial or waste your time. I don't think that that is what is being conveyed. I don't. I think that if you look at the following statements, she points to Gaines' testimony and she points to the defendant's confession. I think she's basically conveying that we presented enough for you to render your verdict. And I don't think that the reference to these other witnesses was in any way to corroborate what was said. She doesn't say that they would have said the same thing. She says we could have had them talk about what they experienced, what they did, but we didn't do that. Is he correct, is defense counsel correct, in his brief, that at no point did any witness identify the defendant in the courtroom as a person who committed these crimes? He is correct. That never happened? Nobody ever said that's the guy? Unfortunately, it did not. And, of course, it would have been better practice for that in-court identification to have occurred, but the law does not require an in-court identification. This court's opinions are... The law requires... ...by way of proof of criminal agency, if not an identification of the defendant as the person who committed the crime. Oh, to be clear, there needs to be an identification of the defendant, but there does not need to be a pointing by a witness to a defendant saying that was the man. Was there a video of the defendant shown to the jury? Yes, the video clips of the two pieces that we attempted to play of the confession that did depict the defendant. I think also we have the testimony of the defendant's uncle who says, this is my nephew. I have known him... But what connects? How does that testimony, that's my nephew, how does that connect? Did he ever say, my nephew committed the crime with me? In other words, how do you connect in the evidence, in the record, including the video, that apparently nobody could hear? How do you connect the person sitting in the courtroom with your burden to show, beyond a reasonable doubt, that the person sitting in the courtroom is the same person who committed the offense? Well, I would direct this court's attention to United States v. Taylor. It's a 1990 published opinion. I don't believe it's cited in our brief, but it's at 900 F. Second 779. And in that opinion, this court has said, quote, a witness need not physically point out a defendant so long as the evidence is sufficient to permit the inference that the person on trial was the person who committed the crime. And then more recently... So what was the evidence supporting the inference in Taylor? It was one individual who identified the defendant by name and then went on to say, connected the defendant's name to the offense. So John Doe, that's John Doe, and a man named John Doe committed the crime with me. Is that what you mean? I think that the... I mean, was that Taylor? I think that there was greater discussion about the defendant, his involvement in the offense, but the point... You mean in Taylor or in this... In Taylor. In Taylor. Now, but there was... What is it here that connects the guy who was in the courtroom for that one-day trial and the offenses in the indictment? Well, I would point to the testimony of Gaines and also the testimony... Point to the video. It's just a slam dunk. Yes, and also the video. The man's in the video, and they can see the video, and they can see the man in the courtroom. What did he say in the video that the jury heard? It's not what he said. It's what his appearance, right? I would agree. So you're saying that the police can make a movie of anybody they want and bring them in the courtroom, and that's enough? That is not what I'm saying. Okay. I thought that's what you were saying to Judge Niemeyer. It was a confession. I think that... Did the jury hear the confession? The jury heard portions, but it was truncated because of the... What do you mean, heard portions? We attempted to play the transcript, and some of it was heard. However, at the point where the court was concerned that it was not being understood by all the jurors, it was stopped. And so did the jury get the transcript? The jury received the relevant pages of the transcript, which was... Where he said, I did it? Yes. Redacted 52, where he goes through, and he says that he confessed. You also have the testimony of the arresting officer who arrested Mr. Johnson and took his statement. That's Eubanks. He said that, I arrested Mr. Johnson, and he confessed to me. And I think that it is absolutely fair, given that, given Gaines's testimony, given the video, that the jury can infer that the person sitting at the defendant's table was the Mr. Johnson. I actually thought you were going to say, in the Rule 29 motion, didn't mention any of this. The Rule 29 didn't mention any of this. So why didn't you just say that? If it's waived, it's waived. Well, it's true that it hasn't been raised in the Rule 29 motion, and I would also point out that the defendant did, through his closing arguments, attempt to make this sort of an argument to the jury, and the jury, they didn't believe it. But if you didn't include it in the Rule 29 motion, it doesn't matter, does it? I mean, for plain error purposes, sure, but if you didn't raise a failure proof as to identity, it's only before us on plain error. It is, and the defendant can't meet that heavy burden. Well, it is, unless you view it as one of many mistakes made throughout this trial, and you have to take it into consideration in evaluating the cumulative effect of this trial, which has, frankly, a lot of mistakes in it. This wasn't a perfect trial. Is this her first trial, her first felony trial? No, this was not her first felony trial. I am not certain. She is a Salsa, and I think is more accustomed to practicing in the state court. She sort of got really, she got the bum rush here, not to put too fine a point on it, by the district court. I get the impression the court really wanted to finish this thing in one day, and the court did finish this thing in one day. I think it's fair to say that the court wanted to keep the case moving along. Hobbs Act robbery, including, well, never mind. And in response to that... When did the jury go home? I'm not entirely certain. I think they went home around dinner time. Dinner time? Yes, I'm not sure. And I think that I'd like to respond to the cumulative error argument in part by pointing out that there are certain things the defendant claims are error, and we submit that they're not. With respect to the confrontation clause argument, Eubanks's statement that Gerald Eumann implicated himself, the defendant, in gains, that was offered as background information. It was offered as context to explain why the defendant, or why Eubanks then started looking into gains in the defendant. And... Wouldn't you agree that is extremely prejudicial to the defendant? I think that in the context of this case, no, it's not extremely prejudicial. Well, I do believe that it was a brief reference given just as background to explain, because the immediate follow-up question is, well, what did you do in response to this conversation with Eumann? And I think that where you have the co-defendant testifying, and you also have a confession of the defendant, this passing reference that one of the co-defendants in one of the robberies... Who's not testifying. Who's not testifying. Said he did it. Yes, but again, I think it is not being... I can't imagine much better evidence than that. I think that it's not being introduced for the truth of the matter asserted. Oh, jurors don't understand that. Well, that is my position, that it wasn't being offered for the truth of the matter asserted, and the confrontation clause is just not implicated if it's not hearsay. Now, with respect to the argument for the hearsay objections, I'll note that we discuss it as being a harmlessness analysis in our brief, but on closer review, it is definitely a plain error analysis as to the comments about Davis. If you look on page 261, where there is a question about, did you speak with Davis? Did he discuss the details of you? There is no objection by defense counsel to that portion. Now, with respect to Gaines, I would also make the argument that it would be plain error as to him, too. On page 258-260, government counsel did ask, and you were sitting here in the courtroom when Mr. Gaines testified. I was. Did he testify consistently with what he told you? He did. And then the agent goes on to say, and let me correct myself, the very next day after the interview, some of the information we received was that the suspects went to, that's when the objection comes in. It is not to the testifying consistently, nor is it to later on, where further details of the statement were given. And with Gaines, we submit that it is, it was the evidence of the prior consistent statement was admissible under 801-D1B. I suppose I should ask you in fairness, was it his first felony trial as well? I don't believe so. His second? I don't know, but I would agree that as a practice pointer, additional prep could have been beneficial. On both sides? Yes. But it was offered to rebut an express or implied charge that Gaines recently fabricated his story. And I'll point out to you that these offenses were in July of 2011. Gaines gave his statement, I believe in August of 2011. It was not until October 2012 that Gaines entered a guilty plea and agreed to cooperate with the government. And then January 2013 is the trial. And if you look at the very opening of defense attorney's cross of Gaines, it says, it's essentially, you just recently agreed to plead guilty and cooperate with the government, and you just recently decided to testify. He is absolutely suggesting that based on the plea agreement and the agreement to testify and the decision to testify, that Gaines would be trying to curry favor with the government. And the fact that that statement is consistent with what he made more than a year earlier is admissible to rebut the implication that there is that motive. With respect to the judicial intervention and bias, that too is a plain air standard. I think that the parties disagree about that. The defendant's position is that it should be de novo. And I would point the court to one of the cases that we cited in our brief, United States v. Smith. In that case, the court applied a plain air standard to the defendant's argument that they were denied a fair trial because the district court improperly intervened with prosecution-friendly questions and interruptions. And United States v. Goodwin, which is cited in Smith, was the first time that this court resolved in a published opinion that a plain air standard applies. Furthermore, to the extent that there's a claim of bias, this defendant never sought to have this judge recused, never brought to the court's attention its concern that it was biased. That too is subject to plain air. And I would urge the court, in looking at the questions asked by the district court, they did not suggest favoritism to one side or another. Generally, they were more efficiently eliciting testimony or clarifying. And I don't think that there was anything about the court's statements suggesting that it knew the answer. It was curious, and it was asking questions and clarifying matters that were important to him and that he thought would be important to the jury. If the court has no further questions, we would rest on our brief. And we agree that this was not a perfect trial, but it was a fair trial, and we're asking that you affirm the convictions. Do you have any more questions? Okay, thank you. Reply. To be clear, I'm concerned greatly about the closing argument statements and the testimony of Eubanks, but I'm also concerned about the whole procedure, the way that Mr. Johnson was treated, and whether or not a start-to-finish read of this transcript shows that justice was done, that a fair trial was had by this defendant. I'm concerned about Eubanks because it's from his portion of the trial that we have the confrontation issue, the 801-D1B issue, the exhibits issue, the 404-B issue. I mean, the government used Eubanks to do a lot of things, and the review on the 801-D1B issue is for harmless error. The defense counsel, who I actually believe it was his first federal trial, he did everything he could to stop all of this stuff from coming in. I believe he made nine objections over the course of three pages. He objected to the confrontation. Objection overruled, objection overruled. And I believe that the court can take from that that he was opposed to, was trying to keep all these statements from coming in, and I do believe it is harmless error there. Part of the problem with the bolstering with the 801-D1B and with the closing arguments in Eubanks is that you have Eubanks throughout his description of the prior consistent statements giving his comments as to the truthfulness of the witnesses also. So at one point he says, originally Gaines didn't put himself there, but then he became truthful and told us what really happened. And the same with Davis. You have Eubanks saying, well, at first he didn't tell us everything, but then he told us, he came, you know, he then told us the truth and told us everything that was right. The problem also with the recitation of the out-of-court statements is that his claim that they're consistent is actually kind of false because both Davis and Gaines first lied. Davis said he wasn't robbed of marijuana, when he clearly was, and he denied having 10 pounds in his backyard. Gaines said that he wasn't a part of the Davis robbery. They both gave second statements to the police that were, to be fair to the special agent, consistent with the trial testimony. But when Eubanks says everything they said on the stand is consistent with what they told me, it's not clear whether he's talking about what they told him the second time or what they told law enforcement the first time. So the problem both of it coming in under 801D1B improperly but also it just being false testimony. In addition to what I describe as just garbled jury instructions that really do mess up 924C, that don't break out the difference between use and carry during in relation and a separate offense of possession and furtherance of, there's an error under 18 United States Code, section 3501 in Saul's, which is where there's a confession, there has to be an instruction to the jury about how to consider that, if there's a question about the voluntariness of this. The court did a voir dire about that. Saul says that if the jury, if the judge doesn't give that instruction on his own, it's clear error and needs to go back. I've raised it in my opening brief. The government choose not to discuss it, but I think on that basis alone, the court can conclude that there was an error with the instructions that warrants remand. As to the bias issue, I've cited Medford in my brief and I believe where the claim is biased, the court has to look at the entire transcript and to look at the way the defendant was treated and to gauge from that, if it appeared that the judge was putting the imprimatur of Article III on the scale in favor of one party or the other. While there is, and this is to the sufficiency of the evidence argument, I would first say, Judge Davis, that where you make a Rule 29 motion, the court has to be satisfied as to all parts of it and identity is a part of the evidence. And so I think, though... You have to specify the issue as to which there's insufficient evidence. You can't just stand up and make a motion of judgment of acquittal and sit down. I mean, you could do that, but it wouldn't mean anything. I think that there are, to have the... I do think that it's properly preserved, but I think the Rule 29 motion alerts the court that it needs to make sure that as to all the issues, as to identity, as to the elements, that those have been proved. And so I do believe that making that Rule 29 motion puts us on de novo review. What was the ground relied on in the Rule 29 motion? Do you remember? There was no... The district court made no findings whatsoever. No, what did the lawyer say? I'm not concerned about the district court. What did the lawyer say? I believe he said, I think there are problems with some of the count, certainly these, but maybe others. That's all he said? That was it. I'll tell the court... Because otherwise, you... Rob, go ahead, go ahead. I'll tell the court that the question of whether or not he's been identified in the video, the video is in the court's record. It came up, I believe, from the district court. It's Exhibit 51. I don't believe anybody can identify the defendant that was sitting at the table as the person in that video based on that one little video clip. I'd ask the court, if it's considering that issue seriously, to look at that video because it's true. They say, we're charging Alan Johnson, and they told the court, this is Alan Johnson, and the court will open the statements and everything in the description of the case. We're charging Alan Johnson with crimes A, B, and C. And then the agent puts on evidence that I arrested and spoke with Alan Johnson and he confessed. Is that an identification? I don't believe so, Your Honor. Not in court. You must identify the individual that was in that courtroom as that same individual. Sure, that's so. It seems to me if you can... The person who committed the crime is Alan Johnson,  Was any other... Were there any other Alan Johnsons involved in the case? Or anyone else referred to as A.L.A.? No. No, I think, though, that... If I could just finish briefly, Your Honor. I think the lack of sort of trial 101 issue, to have anybody do that, I think is indicative of the way this trial went. It is one of a number of cumulative errors that even if some are harmless, I've identified in our brief a score of errors that cumulatively suggest that what Mr. Johnson got was not a fair trial and start to finish a read of this transcript doesn't really stand up and is not an example of how a federal jury trial should be conducted in our federal courts. For those reasons, I'd ask the court to vacate the judgment as to counts 2 through 9. I'd ask that it vacate it for innocently evidence, but if not that, to remand for a new trial as to those counts. Mr. Johns, I note that you're court-appointed. We appreciate very much your undertaking. Representation of Mr. Johnson, you've done a good job for it. Thank you, Your Honor. All right. We'll go down and recounsel, then go into our last case.
judges: William B. Traxler Jr., Paul V. Niemeyer, Andre M. Davis